******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ANDRE DENNIS *v.* COMMISSIONER OF CORRECTION
## (AC 39874)

Keller, Elgo and Eveleigh, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance by failing to request a stay of execution that resulted in the petitioner's loss of sixteen days of presentence incarceration credits. Pursuant to a plea agreement on various charges under multiple docket numbers in the Waterbury Superior Court, the petitioner admitted to having violated his probation and pleaded guilty under the *Alford* doctrine to criminal violation of a restraining order, criminal violation of a protective order and the crime of assault in the third degree. At the plea and sentencing hearing, the trial court canvassed the petitioner regarding the plea agreement and provided the prosecutor, trial counsel and the petitioner with the opportunity to present any reasons why it should not be accepted. When no reasons were given, the court accepted the plea agreement and sentenced the petitioner in accordance with the state's recommendation. Thereafter, the court inquired whether any other matters needed to be addressed prior to the conclusion of the hearing, and no requests were made. Later that day, however, trial counsel filed a motion for presentence incarceration credits but did not request a stay of execution of the sentence. Approximately three weeks later, the petitioner, pursuant to a separate plea agreement, pleaded guilty under the *Alford* doctrine to various charges in the Meriden Superior Court and was sentenced to a term of incarceration that was to run concurrently with the Waterbury sentence. The habeas court rendered judgment denying the habeas petition, concluding that the petitioner failed to establish that trial counsel had rendered ineffective assistance. Thereafter, the habeas court denied the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. Contrary to the claim of the respondent, the Commissioner of Correction, the petitioner's appeal was not moot, as practical relief remained available to the petitioner despite that fact that he was no longer incarcerated; if this court reversed the habeas court's judgment, the benefit to the petitioner would be the retroactive modification of his definite sentence so as to incorporate the sixteen days of presentence incarceration credits, thereby advancing his effective release date and reducing the amount of time he is required to spend on special parole.

2. The habeas court abused its discretion in denying the petition for certification to appeal; the resolution of the petitioner's underlying claim that trial counsel rendered ineffective assistance involved issues that were debatable among jurists of reason, could have been resolved by a court in a different manner and were adequate to deserve encouragement to proceed further.

3. The habeas court improperly concluded that the petitioner failed to establish that trial counsel rendered ineffective assistance by failing to request a stay of execution of the Waterbury sentence, as there was no reasonable strategic reason for trial counsel not to request a stay of execution after the sentence had been imposed: although this court deferred to the habeas court's determination that trial counsel credibly testified that his failure to request a stay of execution was the result of a strategic decision to move through the sentencing hearing without incident in order to not jeopardize the trial court's acceptance of the plea agreement, this court, as a matter of law, concluded that trial counsel's decision was not the product of reasonable professional judgment, as it was not reasonable for him to believe that once the court accepted the plea agreement, the petitioner would have been able to withdraw it because he likely would have been barred from doing so pursuant to the relevant rule of practice (§ 39-27), and there was no reasonable basis for trial counsel to believe that the court could have modified the petitioner's sentence, once imposed, in a way that would have jeopardized the plea agreement; moreover, in light of *Gonzalez* v. *Commissioner of*

*Correction* (308 Conn. 463), which held that in the absence of a strategic justification, the failure to request a bond increase that would have allowed the petitioner to earn credit for a period of presentence incarceration constituted deficient performance, the failure of trial counsel here to request a stay of execution of the Waterbury sentence once it had been imposed constituted deficient performance.

4. The petitioner's claim that he was prejudiced by trial counsel's deficient performance in failing to request a stay of execution of the Waterbury sentence because it resulted in his loss of sixteen days of presentence incarceration credits was supported by the record; the undisputed evidence in the record indicated that the petitioner would have been able to apply sixteen additional days of presentence incarceration credits to his definite sentence had a stay of execution been requested and accepted, and, therefore, the habeas court abused its discretion in denying the amended petition for a writ of habeas corpus.

Argued September 25, 2018—officially released May 7, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Reversed*; *judgment directed.*

*Nicholas Marolda*, assigned counsel, with whom was *Temmy Ann Miller*, assigned counsel, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Rebecca A. Barry*, assistant state's attorney, for the appellee (respondent).

*Opinion*

EVELEIGH, J. The petitioner, Andre Dennis, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) incorrectly concluded that he failed to establish that his trial counsel rendered ineffective assistance when trial counsel failed to request a stay of execution that resulted in the loss of sixteen days of presentence incarceration credits. We agree with the petitioner that the habeas court improperly denied his petition for certification to appeal, and, after considering the merits of his claim, we conclude that the habeas court incorrectly determined that trial counsel did not render deficient performance when he failed to request a stay of execution of the petitioner's prior sentence. We, therefore, reverse the judgment of the habeas court.

The record discloses the following facts and procedural history. On July 30, 2015, the petitioner, who at the time was represented by Attorney Michael Richards (trial counsel), entered into a plea agreement at the Superior Court in Waterbury on a series of charges resulting in a total effective sentence of three years incarceration, followed by five years of special parole.[1] As part of the Waterbury plea agreement, the petitioner pleaded to the following: Admission of two counts of violation of probation in Docket Nos. CR-12-0410035-S and CR-12-0412661-S, and guilty under the *Alford* doctrine[2] to criminal violation of a restraining order in violation of General Statutes § 53a-223b in Docket No. CR-14-0423367-S, criminal violation of a protective order in violation of General Statutes § 53a-223 and the crime of assault in the third degree in violation of General Statutes § 53a-61 in Docket No. CR-14-0424236-S, and criminal violation of a protective order in violation of § 53a-223 in Docket No. CR-15-0432507-S.

Prior to accepting the pleas, the court canvassed the petitioner with respect to the plea agreement and found that it was entered into voluntarily and with the assistance of competent counsel. After accepting the pleas, but prior to imposing sentence, the court asked the petitioner if he would like to address the court. The petitioner stated that he "just want[ed] to make sure all [his] jail credit [would be] applied to all [his] dockets, even for . . . [the] Meriden cases." The court responded that because the petitioner's other cases were pending in a different jurisdiction, it had no control over them, but stated: "What I can do is give you credit for any time you were incarcerated during the pendency of these cases that are in this jurisdiction."[3] The court then sentenced the petitioner to a total effective sentence of three years incarceration, followed by

five years of special parole in accordance with the state's recommendation. Prior to the conclusion of the proceeding, the court again asked whether anything else needed to be addressed before the conclusion of the proceeding. Trial counsel thanked the prosecutor and the court but made no further requests. Later that day, trial counsel filed a motion for presentence incarceration credits with the court but did not request a stay of execution of the sentence. On the following day, July 31, 2015, the court granted the motion.

Approximately three weeks later, on August 20, 2015, at the Superior Court in Meriden, as part of a separate plea agreement that stemmed from separate charges, the petitioner was sentenced to a total effective sentence of two years of incarceration, which was to run concurrently with the Waterbury sentence.[4] As part of the Meriden plea agreement, the petitioner entered *Alford* pleas to the following charges: One count of criminal violation of a protective order in violation of § 53a-223 in Docket No. CR-14-0277421-S and one count each of the crimes of assault in the third degree in violation of General Statutes § 53a-61 and failing to appear in the first degree in violation of General Statutes § 53a-172 in Docket No. CR-13-0275489-S.

On February 25, 2016, the self-represented petitioner filed a petition for a writ of habeas corpus alleging that trial counsel had rendered ineffective assistance in several respects relating to the application of presentence incarceration credits. On August 3, 2016, the petitioner, now represented by assigned counsel, filed the operative amended petition, claiming that trial counsel had rendered ineffective assistance by failing to adequately preserve the petitioner's incarceration credits for time already served and that but for trial counsel's deficient performance, there was a reasonable probability that the petitioner would have a more favorable outcome in the form of a reduced period of special parole.

The petitioner's habeas trial was held on November 9, 2016, before the court, *Fuger, J.* During the evidentiary hearing, trial counsel testified that, while he was representing the petitioner at a violation of probation hearing in which the petitioner faced ten years incarceration, the petitioner informed him that he wanted to take the plea agreement that trial counsel had previously negotiated with the Waterbury prosecutor. Later in the hearing, when asked why he didn't ask for a stay of execution, trial counsel testified that the petitioner had been a difficult client who had tried to fire both of his previous attorneys and was unwilling to negotiate with the prosecutor. He further testified that "[the petitioner] kept wavering. There's a long track record of him blowing up, trying to fire everyone that had represented him in the past. I was just trying to get through the canvass really. . . . [W]e were kind of in the middle of a confus-

ing moment there with the plea. I probably should have [requested the stay]. I'm not sure what the result was that we didn't do it, but again, I thought that his jail credit was a mess in Meriden anyway."

The court also heard from the Meriden trial counsel, who testified that he also did not ask for jail credits at the subsequent sentencing, but stated: "[I]t's something I should've done. I don't really have an explanation for [not doing] it." Furthermore, the petitioner's expert witness testified that defense attorneys in Connecticut have been aware of the issues surrounding jail credit for some time now and have learned through experience that it is necessary to take steps to protect whatever credit there may be. The expert further testified that having a strained relationship with a client and an urge to proceed through a hearing quickly does not justify failing to ask for a stay of execution and that one should always ask, except when it is counter to the client's express wishes. After the conclusion of evidence, the habeas court denied the petition by oral decision, concluding that there was no deficient performance on the part of trial counsel. This appeal followed.

On appeal, the petitioner claims that the habeas court abused its discretion when it found that he failed to prove that trial counsel's failure to request a stay of execution, which deprived him of sixteen days of presentence incarceration credits, constituted ineffective assistance of counsel.[5]

As a preliminary matter, we address the claim of the respondent, the Commissioner of Correction, that the petitioner's appeal should be dismissed as moot. This claim is predicated on the fact that the petitioner is no longer incarcerated.[6] The respondent argues, therefore, that this court can afford the petitioner no practical relief. Although the petitioner is no longer incarcerated, the petitioner argues that practical relief still remains available because an order modifying the original sentence to include the sixteen days of presentence incarceration credit would likely lead to the advancement of his release from special parole by approximately that same amount of time. We agree that practical relief remains available to the petitioner, and, therefore, this appeal is not moot.

Our Supreme Court addressed a similar issue in *Murray* v. *Lopes*, 205 Conn. 27, 529 A.2d 1302 (1987). In *Murray*, the petitioner was sentenced to a two year period of confinement, followed by a period of probation. Id., 29. During the pendency of his appeal from the denial of his petition for a writ of habeas corpus, the petitioner was released from confinement and began serving the period of probation. Id., 29–30. In addressing a similar mootness argument, our Supreme Court concluded that the petitioner's appeal was not moot, despite his release from confinement, because, although no longer "confined," he was still serving the

probationary portion of his sentence. Id., 31. The court further concluded that it could afford the petitioner practical relief, because an order directing the commissioner to recalculate the petitioner's sentence with the credit sought under General Statues § 18-98d would affect the period of probation and result in the petitioner completing his probationary period three months sooner by advancing his release date. Id., 30–31; see id., 31 ("[t]herefore, since our resolution of the issue presented in this appeal will affect [the petitioner's] period of probation, the appeal is not moot").

In the present case, although the respondent argues that no relief exists, we note that if the petitioner successfully prevails on his claim and we were to reverse the judgment of the habeas court, the benefit to the petitioner would be the retroactive modification of his definite sentence so as to incorporate the sixteen days of presentence confinement credits, thereby advancing his effective release date from prison and reducing the amount of time he is required to spend on special parole. See id; see also *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 484, 68 A.3d 624 (2013), cert. denied sub nom. *Dzurenda* v. *Gonzalez*, 571 U.S. 1045, 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013); *Ebron* v. *Commisioner of Correction*, 307 Conn. 342, 356, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).[7] Although, under this scenario, the calculation with respect to the petitioner's period of special parole would be administered by the Department of Correction and not by the court, the modification of the petitioner's definite sentence would, nonetheless, result in the advancement of his effective release date from prison and a reduction in the time he will be required to spend on special parole. See *Gonzalez* v. *Commissioner of Correction*, supra, 490–91 ("The respondent asserts that the petitioner has failed to demonstrate prejudice because presentence confinement credit is an administrative task that takes place after sentencing. This claim is unavailing because the issue herein does not concern whether the respondent properly calculated the petitioner's presentence confinement credit but, rather, involves the failure of the petitioner's counsel to take the necessary and available steps during critical stages of the proceedings to protect his client's statutory right to receive his full presentence confinement credit."). Accordingly, we conclude that practical relief is available to the petitioner and, therefore, conclude that the present appeal is not moot.[8]

I

We now address the petitioner's first claim that the habeas court abused its discretion in denying his petition for certification to appeal from the denial of his amended petition for a writ of habeas corpus. The following standard of review governs our disposition of

this claim. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

As we discuss more fully in part II of this opinion, because the resolution of the petitioner's underlying claim that trial counsel rendered ineffective assistance involves issues that are debatable among jurists of reason, could have been resolved by a court in a different manner, and are adequate to deserve encouragement to proceed further, we conclude that the habeas court abused its discretion in denying the petition for certification to appeal from the denial of the amended petition for a writ of habeas corpus.

II

The petitioner's only substantive claim on appeal is that the habeas court incorrectly concluded that he failed to establish that his trial counsel rendered ineffective assistance when trial counsel failed to request a stay of execution of the Waterbury sentence. Specifically, the petitioner claims that trial counsel rendered ineffective assistance because there was no reasonable strategic reason not to request a stay after the sentence had been imposed. In response, the respondent argues

that the habeas court correctly determined that trial counsel's choice to forgo a motion to stay the execution of the Waterbury sentence was based on a strategic decision to move through the sentencing without incident in order not to jeopardize the court's acceptance of the plea agreement. We agree with the petitioner.

The following standard of review and the legal principles govern our resolution of the petitioner's ineffective assistance of counsel claim. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 470–71, 62 A.3d 534, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013).

"As enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: [1] a performance prong and [2] a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The [petitioner's] claim will succeed only if both prongs are satisfied. . . . The court, however, can find against a petitioner . . . on either the performance prong or the prejudice prong, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Salmon* v. *Commissioner of Correction*, 178 Conn. App. 695, 703–704, 177 A.3d 566 (2017).

A

With the foregoing legal framework in mind, we

address the petitioner's claim that the habeas court incorrectly concluded that he failed to establish that his trial counsel rendered ineffective assistance by failing to request a stay of execution of the Waterbury sentence pending imposition of the Meriden sentence. Specifically, the petitioner argues that, with the Waterbury sentence already imposed, there was no basis for the claim that the petitioner might act in such a way that would cause the prosecutor to withdraw the plea agreement or cause the court to alter the sentence. The petitioner further argues that the underlying premise of our Supreme Court's decision in *Gonzalez* v. *Commissioner of Correction*, supra, 308 Conn. 463, applies to the present case, and, therefore, the petitioner is entitled to the effective assistance of counsel with respect to ensuring that he receives all available presentence confinement credit. In response, the respondent argues that it was a reasonable strategic decision to forgo a motion to stay the sentence because the petitioner could have disrupted the plea process prior to the conclusion of the sentencing hearing, given his tendency toward disruptive behavior and changing his mind. Specifically, the respondent argues that the decision by trial counsel was reasonable given the circumstances because the court could have rejected the plea agreement at any point up to the conclusion of the hearing had the petitioner wanted to withdraw the plea agreement or lost his composure. The respondent further argues that the petitioner's reliance on *Gonzalez* is misplaced because that case dealt with an omission that had no strategic value and addressed whether a bond hearing constituted a critical stage in a criminal proceeding and, therefore, is distinguishable from the present case.

In considering the petitioner's claim that there was no reasonable strategic basis for not requesting a stay of execution, we first address the issue of whether the petitioner could have withdrawn his plea after it was accepted by the court. The following legal principles assist in our resolution of this issue. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . [however] strategic choices made after less than complete investigation are [only] reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland* v. *Washington*, supra, 466 U.S. 690–91. Furthermore, "Practice Book § 39-26 . . . provides: A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, [however] the judicial authority shall allow the defendant to withdraw his or her plea [only] upon proof of one of the grounds in [§] 39-27. A defendant may not

withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed." (Internal quotation marks omitted.) *State* v. *Ramos*, 306 Conn. 125, 133–34, 49 A.3d 197 (2012).

Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows: (1) The plea was accepted without substantial compliance with Section 39-19;[9] (2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed; (3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered; (4) The plea resulted from the denial of effective assistance of counsel; [or] (5) There was no factual basis for the plea . . . ." (Footnote added.) Furthermore, "[t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39–27]." (Internal quotation marks omitted.) *State* v. *Anthony D.*, 151 Conn. App. 109, 114, 94 A.3d 669 (2014), aff'd, 320 Conn. 842, 134 A.3d 219 (2016).

At the Waterbury sentencing hearing, the court presented the petitioner with the various charges against him and inquired whether he had sufficient time to discuss the plea agreement with trial counsel. The court also asked whether the petitioner was satisfied with trial counsel's advice. The petitioner answered in the affirmative to both inquires. The court proceeded to canvass the petitioner in accordance with Practice Book §§ 39-19 through 39-22. The court then asked whether trial counsel or the prosecutor knew of any reason why the plea should not be accepted. No reasons were given by either representative.

The court made a finding that the plea agreement was made voluntarily and with the assistance of competent counsel, and accepted it. After the plea agreement had been accepted, but before the sentence was pronounced, the court asked whether the state or the petitioner wanted to be heard on anything further. The petitioner stated that he "just want[ed] to make sure all [his] jail credit [would be] applied to all [his] dockets, even for . . . [the] Meriden cases." The court explained that because the Meriden cases were pending in another jurisdiction, the court had no control over them. The court further stated: "What I can do is give you credit for any time you were incarcerated during the pendency of these cases that are in this jurisdiction." The court then asked if there was anything else. The petitioner asked to be heard a second time and pro-

ceeded to apologize to the court for his previous outburst and for any inconvenience that he may have caused to the court, the state, and the victims. The court then pronounced sentence.

In the present case, the sentencing court canvassed the petitioner in conformity with the relevant rules of practice and provided the prosecutor, trial counsel, and the petitioner sufficient opportunity to present any reasons why the plea agreement should not be accepted. Our review of the record fails to disclose any findings or circumstances that would lead us to conclude that the requirements set forth in § 39-27 had been violated.[10] Although we defer to the habeas court's determination that trial counsel credibly testified that his failure to request a stay of execution was the result of a strategic decision, as a matter of law, we conclude that trial counsel's failure to request a stay was not the product of reasonable professional judgment. See *Strickland* v. *Washington*, supra, 466 U.S. 690–91. Trial counsel's concern that the petitioner could withdraw his plea, even after it had been accepted by the court, was not reasonable given that had the court accepted the plea agreement and had the petitioner subsequently sought to withdraw it, he likely would have been barred by § 39-27. Accordingly, we conclude that it was not reasonable for trial counsel to believe that once the court accepted the plea agreement, the petitioner would have been able to withdraw it.

We next address whether the court could have modified the petitioner's sentence on the basis of the petitioner's behavior after the sentence was imposed, but prior to the conclusion of the sentencing proceeding. To begin, we acknowledge the common-law principle that a sentencing court retains jurisdiction over the proceeding and, thus, the authority to modify the sentence, until custody passes to the respondent, unless otherwise permitted by statute. See *State* v. *Ramos*, supra, 306 Conn. 133–34. Moreover, this court has held that a sentencing court can impose a greater sentence than what was originally provided for in a plea, even after a plea has been accepted by the court, upon the presentation of new information. See Practice Book § 39-27 (3);[11] *Ebron* v. *Commissioner of Correction*, 120 Conn. App. 560, 564–65, 992 A.2d 1200 (2010) (following petitioner's rejection of state's plea agreement with specified sentencing recommendation, court accepted open plea and sentenced petitioner to greater period of incarceration than state's recommendation after it reviewed new information in unfavorable presentence investigation report), rev'd in part on other grounds, 307 Conn. 342, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).

"The critical question in determining whether a court may take action affecting a defendant's sentence follow-

ing its imposition [then] is whether the requested action is punitive in nature. If the requested action is not punitive in nature, then a defendant's sentence is not affected, and the trial court has jurisdiction to take that action. If it is punitive, [however] then a defendant's sentence is affected, and the trial court lacks jurisdiction to take that action." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Banks*, 321 Conn. 821, 831, 146 A.3d 1 (2016) (considering effects of legislative enactment subsequent to imposition of defendant's sentence that altered aspect of defendant's sex offender reporting obligations).

In the present case, even though the sentencing court retained jurisdiction over the matter prior to the conclusion of the petitioner's sentencing hearing, any subsequent modification of the sentence after imposition would be prohibited if construed as punitive. Had the sentencing court modified the sentence, for example, by withdrawing its acceptance of the plea agreement on the basis of the petitioner's behavior, it would be difficult to see that decision as anything but punitive. We conclude, therefore, that there was no reasonable basis for trial counsel to believe that the court could have modified the petitioner's sentence, once imposed, in a way that would have jeopardized the plea agreement.

Next, the petitioner argues that *Gonzalez* v. *Commissioner of Correction*, supra, 308 Conn. 463, supports his claim and should apply with equal force in the present case. In *Gonzalez*, our Supreme Court affirmed this court's determination that a failure to request a bond increase, which, if granted, would have allowed the petitioner to earn credit for a period of presentence incarceration, was deficient performance because, despite the fact that the ultimate decision of whether to grant the bond increase was discretionary, there was no strategic reason available not to ask for it. Id., 489–91. The petitioner argues that although the present case deals with facts concerning a different stage of a criminal proceeding, the essential thrust is the same: absent a strategic justification, failure to maximize presentence confinement credits constitutes deficient performance. Under the facts of the present case, we agree with the petitioner.

Although a stay of execution can be a negotiable term in the plea process that may involve strategic considerations and, therefore, is dissimilar to the routine bond increase addressed in *Gonzalez*, the issue here is not whether requesting a stay is strategic in nature or part of some strategic process, but whether trial counsel took the necessary and available steps during critical stages of the proceedings to protect the petitioner's statutory right to receive his full presentence confinement credit. See id., 490.

In the present case, given that we can ascertain no

reasonable basis from the record that supports the respondent's claim that trial counsel's failure to request a stay of execution was the product of a reasonable strategic decision, the distinction that the respondent draws between requesting a bond increase and requesting a stay of execution is not persuasive in respect to the issue presented in this appeal. Accordingly, we conclude, on the basis of *Gonzalez*, that trial consel's failure to request a stay of execution once the sentence had been imposed constituted deficient performance. Id.

B

Lastly, we address the prejudice prong of *Strickland.* The petitioner claims that he was prejudiced by trial counsel's failure to request a stay of execution for the Waterbury sentence because he was unable to apply sixteen days of presentence incarceration credits toward his controlling sentence in Meriden that he would have received if not for defense counsel's deficient performance. The petitioner further argues that *Glover* v. *United States*, 531 U.S. 198, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001), and *Ebron* v. *Commissioner of Correction*, supra, 120 Conn. App. 560, support a finding of prejudice because being incarcerated for even more than one additional day is prejudicial. In response, the respondent argues that the habeas court's decision was based solely on the deficient performance prong of *Strickland* and failed to make any findings with respect to the issue of prejudice, and, as a result, the petitioner's analysis of prejudice is irrelevant to the present appeal.[12]

The following legal principles govern our analysis of the petitioner's claim. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding. Its protections are not designed simply to protect the trial, even though counsel's absence [in these stages] may derogate from the accused's right to a fair trial. . . . The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice. This is consistent, too, with the rule that defendants have a right to effective assistance of counsel on appeal, even though that cannot in any way be characterized as part of the trial. . . . The precedents also establish that there exists a right to counsel during *sentencing* . . . . [See *Glover* v. *United States*, supra, 531 U.S. 203–204]. Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because any amount of [additional] jail time has Sixth Amendment significance. [Id., 203]." (Citations omitted; emphasis added; internal quotation marks omitted.) *Lafler* v. *Cooper*, 566 U.S. 156, 165, 132

S. Ct. 1376, 182 L. Ed. 2d 398 (2012); see also *Ebron* v. *Commissioner of Correction,* supra, 120 Conn. App. 581–82 (habeas court properly determined that petitioner suffered prejudice when trial counsel's deficient performance resulted in additional incarceration); see id., 582 ("The petitioner suffered the prejudice of . . . [additional] incarceration as a direct result of [trial counsel's] deficient performance. . . . Further, the outcome of the proceedings was affected directly by the petitioner's counsel . . . and [resulted in] the loss of a lesser sentence." [Internal quotation marks omitted.]).[13]

At the habeas trial, during the petitioner's closing remarks, the habeas court asked the following: "[E]ven assuming for the sake of argument that it was deficient performance not to ask for the stay of execution . . . what evidence, if any, have you presented to this court that such request would have been granted?" The petitioner answered that, at sentencing, the fact that he requested credits for the time already served and that the court indicated it would give him the maximum amount it could, indicates that the court was amenable to providing the petitioner with whatever credits it could. The petitioner also pointed to the fact that when trial counsel filed a motion for presentence incarceration credits, the trial court granted the request, in toto, the next day. Although the habeas court made no mention of prejudice or whether a more favorable outcome would have been likely had defense counsel acted differently, it acknowledged in its oral decision that "[t]his area of jail credits in Connecticut is extremely confusing. . . .

"I will comment that while what is at issue here is whether [the petitioner] is entitled to receive sixteen days of jail credit and thereby be released slightly over two weeks earlier, that's not insignificant. To [the petitioner] those are two weeks of his life that have—if he spends it in jail, he can never get back. So, I do think this is a significant issue, whether it be sixteen days, sixteen months or sixteen hours."

"[A]lthough it is axiomatic that this court cannot make factual findings, factual conclusions may be drawn on appeal if the subordinate facts found [by the trial court] make such a conclusion inevitable as a matter of law . . . or where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision." (Internal quotation marks omitted.) *Washington Mutual Bank* v. *Coughlin,* 168 Conn. App. 278, 289, 145 A.3d 408, cert. denied, 323 Conn. 939, 151 A.3d 387 (2016); see also *Hickey* v. *Commissioner of Correction,* 329 Conn. 605, 618–19, 188 A.3d 715 (2018).[14] In light of the undisputed evidence in the record that the petitioner would have been able to apply sixteen additional days of presentence incar-

ceration credits to his definite sentence had a stay of execution been requested and accepted, we conclude that the record clearly supports the petitioner's argument that he was prejudiced as a result of trial counsel's deficient performance. Accordingly, we conclude that the habeas court abused its discretion in denying the amended petition for a writ of habeas corpus.

The judgment is reversed and the case is remanded to the habeas court with direction to grant the petitioner's amended petition for a writ of habeas corpus and to remand the case to the trial court with direction to modify the petitioner's sentence in accordance with this opinion, so that it reflects the sixteen days of presentence confinement credits that otherwise would have been applied to the petitioner's sentence.

In this opinion the other judges concurred.

[1] On July 30, 2015, prior to entering into the plea agreement, the petitioner was in court for a violation of probation hearing where he faced a possible ten year period of incarceration. During the hearing, the petitioner notified trial counsel that he wanted to take a prior plea agreement that had been offered by the state in the pending Waterbury cases. Thereafter, the hearing was referred to the court, *Fasano, J.*, for resolution of both the plea agreement and the violation of probation.

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), [a]n individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." (Internal quotation marks omitted.) *Garner* v. *Commissioner of Correction*, 330 Conn. 486, 490 n.5, 196 A.3d 1138 (2018).

[3] After having accepted the plea agreement, but prior to imposing the sentence, the court addressed trial counsel, stating: "Hold it, I haven't imposed [the] sentence."

[4] The petitioner was represented by different counsel at the Meriden hearing. In this appeal, there is no claim that Meriden trial counsel performed deficiently. Accordingly, we restrict our analysis to whether Richards, who was Waterbury trial counsel, performed deficiently.

[5] The number of presentence incarceration credits that the petitioner would be entitled to, sixteen days, had the court granted a stay of execution on his Waterbury sentence, is not in dispute.

[6] Specifically, the respondent claims that because the petitioner has completed his term of incarceration, General Statutes § 18-98d, which governs the application of presentence confinement credits, does not apply because it applies only to definite sentences and not to periods of special parole. The respondent further claims that to allow unused jail credit to apply to special parole would essentially encourage bad behavior by allowing defendants to collect credits that would offset punishment for future criminal acts and, therefore, is counter to public policy. Because we conclude that practical relief remains available to the petitioner on a separate ground, we do not reach this issue. See footnote 8 of this opinion.

[7] "[T]he United States Supreme Court in *Lafler* [v. *Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)] and [*Missouri* v. *Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012)] did not expressly indicate what should happen under these circumstances, it appears to us that the court intended that, if the court finds a . . . violation, the court should attempt to place the habeas petitioner, as nearly as possible, in the position that he would have been in if there had been no violation." *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 363. "If the petitioner was prejudiced because it is reasonably probable that the [more favorable] sentence . . . would have been imposed if not for the deficient performance of counsel, even considering intervening circumstances, it seems reasonably clear that the appropriate remedy is to impose that sentence." Id., 356.

[8] Because practical relief remains available to the petitioner, we do not reach the issue of whether § 18-98d impliedly excludes the application of presentence confinement credits to periods of special parole.

[9] Practice Book § 39-19 provides: "The judicial authority shall not accept

the plea without first addressing the defendant personally and determining that he or she fully understands: (1) The nature of the charge to which the plea is offered; (2) The mandatory minimum sentence, if any; (3) The fact that the statute for the particular offense does not permit the sentence to be suspended; (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and (5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[10] See *State* v. *Anthony D.*, supra, 151 Conn. App. 118–19 (holding that vague allegations without factual predicates about quality of representation is not sufficient ground to permit defendant to withdraw guilty plea once accepted by court) ("Here, there was a vague allegation that the defendant had concerns about his attorney's representation but no specific facts, and, when the defendant was asked if he wanted to say anything before sentence was pronounced, he specifically declined the opportunity. Neither the defendant nor his attorney were denied the opportunity to present a basis for a plea withdrawal. The trial court need not consider allegations that merely are conclusory, vague or oblique." [Internal quotation marks omitted.]).

[11] Practice Book § 39-27 (3) provides in relevant part that a defendant can withdraw a plea once accepted if "[t]he sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered. . . ."

[12] Although the petitioner did not file a motion for articulation before filing the present appeal, this court retains the authority under Practice Book § 60-2 (1) to require the trial court to complete the trial record in order to aid in the resolution of a case before this court. Judge Fuger, however, has retired from the bench, thereby, precluding the possibility of a motion for articulation. For the reasons we discuss herein, such additional factual findings by the habeas court are not necessary to our analysis.

[13] See *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 364 (affirming this court's prejudice determination).

[14] In *Hickey*, our Supreme Court noted: "[A]fter concluding that the habeas court improperly analyzed prejudice, the Appellate Court should have engaged in a plenary review of the evidence in the record to resolve the commissioner's claim that the petitioner failed to satisfy his burden of proving prejudice as a matter of law, rather than remanding the case for a new habeas trial. . . . Given that the habeas court relied on facts from the criminal trial and its own, undisputed historical factual findings, the Appellate Court had no reason to remand the case to the habeas court to conduct a proper prejudice analysis that the Appellate Court itself could have performed." *Hickey* v. *Commissioner of Correction*, supra, 329 Conn. 618–19; see also *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 637, 153 A.3d 1264 (2017) ("[t]he application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice . . . is a mixed question of law and fact subject to our plenary review").